# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **STATE FARM FIRE & CASUALTY COMPANY,**<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>**CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,**<br><br>　　　　　　Defendant. | **AMENDED MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:13CV223DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant Corporation of the President of the Church of Jesus Christ of Latter-day Saints' Motion for Summary Judgment and Plaintiff State Farm Fire & Casualty Company's Motion for Partial Summary Judgment. On December 18, 2014, the court held a hearing on the motions. At the hearing, Plaintiff was represented by John Lund, Richard A. Vazquez, and Robert T. Denny, and Defendant was represented by Allan L. Sullivan and Amber M. Mettler. The court took the motions under advisement. The court has carefully considered all the materials submitted by the parties and the law and facts relevant to the motions. Now being fully advised, the court enters the following Amended Memorandum Decision and Order.[1]

---

[1] This Amended Memorandum Decision and Order replaces the Memorandum Decision and Order issued by the court on January 13, 2015. The only purpose for the Amendment is to correct a typographical error on Page 12 of that Order. The last sentence in the "equitable

**BACKGROUND**

In 2008, Kyrt Nay, a bishop of a young single adult ward in The Church of Jesus Christ of Latter-day Saints ("the Church"), held a ward event at his home. Nay and his son set up a zip line as an activity, and a member of his ward, Martha Miller, was injured. In 2010, Miller sued Nay for alleged negligence related to a zip line accident that occurred at his home and also sued the Corporation of the President of the Church of Jesus Christ of Latter-day Saints ("COP") for alleged negligence. The parties to that action stipulated to the fact that Nay was acting in the course and scope of his calling as a bishop at the time of Miller's accident.

At the time of the accident, Nay was insured by State Farm under a homeowner's policy for $100,000, and a personal liability umbrella policy for $1,000,000. COP retained its own risk for claims up to $15 million and had an umbrella policy for claims in excess of $15 million. The umbrella policy covered COP's agents or volunteers for acts within the scope of his or her acts while performing duties and services related to COP's church. Miller sought $6 million in damages, which was well below the threshold for COP's umbrella policy.

The Church encourages its volunteers to maintain adequate liability insurance to protect themselves from potential liability related to their volunteer service. The Church Handbook of Instructions tells leaders that such insurance may be available through homeowners or other policies. When Church leaders fail to obtain insurance or when their insurance is exhausted, it is COP's policy to voluntarily protect them from personal liability if they were acting in good faith

---

estoppel" section erroneously stated that it was State Farm's motion for summary judgment when it should have been COP's motion for summary judgment. That sentence now reads: "Accordingly, the court grants COP's motion for summary judgment on State Farm's equitable estoppel claim." No other changes have been made to the prior Memorandum Decision and Order.

at the time of the incident.  COP, however, states that it does not believe that it has a legal obligation to protect its volunteers from personal liability for their own negligence.

When Miller filed her lawsuit, Nay notified State Farm and State Farm retained defense counsel for Nay.  During the litigation of Miller's claims, counsel for both Nay and COP worked together and coordinated discovery and costs for experts.  COP, however, made it clear to State Farm that COP had no intention of defending, indemnifying, or settling Ms. Miller's claims against Nay until and unless Nay's insurance with State Farm was exhausted.

Two years into the Miller Lawsuit, State Farm disclosed the existence of Nay's umbrella policy.  Miller moved to strike Nay's Answer and State Farm responded that it was justified in not disclosing the umbrella policy because it believed that COP should be primarily responsible for Nay's personal liability and that State Farm should not have to provide any insurance coverage under either of the policies Nay held with it.  State Farm claimed that COP's $15 million in self-retained risk qualified as "other insurance" under Nay's policies.  COP, however, asserted that it had no insurance coverage for Nay because it had no coverage for a $6 million claim.  In addition, COP explained that because its liability would be vicarious, COP would have a direct cause of action against Nay to recover any damages it had to pay as a result of his negligence.

When the coverage dispute arose in the Miller Lawsuit and there appeared to be a conflict between State Farm and Nay, COP helped Nay retain individual counsel to represent his own interests.  Nay's individual counsel contacted State Farm.  Shortly thereafter, State Farm agreed to settle with Miller for the full amount of Nay's policies, $1.1 million.  COP also settled with Miller on her claims against it for a confidential amount.

State Farm brought the present lawsuit, arguing that it was not responsible for paying Nay's settlement in the Miller lawsuit. State Farm continues to argue that COP's self-retained risk qualifies as other insurance under Nay's policies and, therefore, must be exhausted before State Farm is responsible to pay. Based on this position, State Farm asserts causes of action for declaratory relief, equitable subrogation, equitable indemnity, estoppel, and unjust enrichment.

## DISCUSSION

### Cross Motions for Summary Judgment

COP argues that it is entitled to summary judgment on all of State Farm's claims. State Farm moves for partial summary judgment on its claims for declaratory relief, equitable subrogation, and equitable indemnity.

**1. Policy-Related Claims**

COP moves for summary judgment on State Farm's policy-related claims for declaratory relief, equitable subrogation, and equitable indemnity, arguing that State Farm cannot prove that Nay was an insured under COP's self-insured retention for purposes of his own personal negligence or that COP's self-insured retention constitutes "other insurance" or "self insurance" as those terms are used in State Farm's policies. State Farm filed a cross motion for summary judgment on these claims, asserting that it is entitled to judgment in its favor as a matter of law.

Nay's homeowner's policy with State Farm provides that "[i]f a loss covered by this policy is also covered by other insurance, [State Farm] will pay only our share of the loss." Nay's PLUP with State Farm provides that "[t]he coverage provided by this policy is excess over all other insurance and self insurance."

"The language of an insurance policy should be construed pursuant to the same rules as

are applied to other ordinary contracts." *Utah Power & Light Co. v. Fed. Inc. Co.*, 983 F.2d 1549, 1559 (10th Cir. 1993). "In general, an 'other insurance' clause is an insurance contract provision designed to avoid liability for an insurer 'by declaring either that another insurer provides primary coverage or that the insurance contract containing the clause provides no coverage when another insurance coverage applies to the loss." *Id*. at 1558 n.2 (citations omitted).

In order for State Farm to prove that what it paid to settle Miller's claims against Nay should have been covered by COP, State Farm has to show that COP insured Nay with respect to the risks at issue in the Miller lawsuit. COP contends that its $15 million self-retained risk does not constitute insurance. Rather, COP asserts that it is a lack of insurance. State Farm, however, asserts that Nay was an insured under COP's self-insurance because he would have been insured under COP's excess umbrella policy.

Several courts have recognized that a portion of self-retained risk, such as COP's, is not insurance. In *American Nurses Ass'n v. Passaic General Hosp.*, 471 A.2d 66, 69 (N.J. Super. Ct. 1984), aff'd in part and rev'd in part, 484 A.2d 670, the court concluded that "self-insurance is "the antithesis of insurance." In *American Nurses*, the National Fire Insurance Company provided liability coverage to the nurses through a policy including an "other insurance" provision. *Id.* at 68. The hospital had its own insurance policy that covered both the doctors and nurses, but it had a $100,000 deductible. *Id.* at 67. The policy referred to the $100,000 deductible as the hospital's "self-insured sum." *Id.* The policy did not refer to any agreement between the hospital and its nurses that might have obligated the hospital to pay the first $100,000. *American Nurses*, 484 A.2d 670, 674 (N.J. 1984). The hospital, however, had

voluntarily opted as a matter of policy to protect nurses who had no other insurance coverage. *Id.* The court held that "such private indemnity agreements are not what the parties contemplated when they referred in their insurance policy to 'other' insurance." *Id.* Therefore, the court concluded that National's policy was the primary insurance with respect to the first $100,000 of the settlement claim. *Id.*

In the context of "other insurance" disputes, court have recognized that "[b]ecause 'self-insurance' does not involve a transfer of the risk of loss, but a retention of that risk, it is not insurance." *State v. Cont'l Cas. Co.*, 879 P.2d 111,1116 (Idaho 1994). "It is axiomatic that self-insurance is not insurance. An allegation of self-insurance, which is equivalent to no insurance, is repugnant to the concept of insurance which fundamentally involves the shifting to a thrid party, by contract, for a consideration, the risk of loss as a result of an incident or event." *Chambi v. Regents of Univ. of Cal.*, 95 Cal. App. 4th 822, 826 (2002).

In this case, there is no contract between COP and Nay that obligates COP to protect Nay from personal liability. There is no evidence that COP insured Nay. There is no contract or agreement between the parties stating that Nay was covered under COP's self-insured retention for personal liability up to $15 million. Even though Nay was covered under the umbrella policy for amounts over $15 million, it does not follow that he was covered for amounts under $15 million as well. Nothing in COP's excess umbrella policy requires or obligates COP to insure Nay against risks that are less than $15 million. Moreover, the present dispute has not triggered the excess umbrella policy and the policy is irrelevant to the Miller lawsuit because liability never approached $15 million.

COP's self-insured retention is not insurance at all. COP has chosen not to obtain

insurance for less than $15 million. Rather, it retains its own risks for that amount. A retained limit simply establishes the point at which the umbrella insurer, not the insured, agrees it will provide coverage. State Farm has not cited the court to any case where an employer's retained limit or self-insured retention under an umbrella policy obligated the employer to insure its employees for amounts under the retained limit.

In addition, as with the hospital in *American Nurses*, the fact that COP voluntarily chooses to protect its volunteers who do not have their own primary insurance for liability amounts up to $15 million, does not create a contractual insurance relationship between COP and all of its volunteers for liability amounts up to $15 million. Such private indemnity would not take priority over personal insurance. COP encourages its volunteers to obtain adequate insurance to protect themselves precisely because it does not have insurance coverage for amounts below $15 million. Moreover, in this case, the fact remains that Nay had personal insurance. What COP may have chosen to do had Nay not had insurance does not inform the court's analysis of whether COP insured Nay because COP was not obligated to do anything.

State Farm argues that although COP denies that its self-insured retention is self insurance, it admits that it registers as a self-insured entity when the law requires it to do so. State Farm claims that this is tantamount to saying that it is self insured when it wants to be, yet it is not self insured when it works to its disadvantage. However, State Farm's arguments ignore the fact that statutes can impose requirements and obligations that do not exist otherwise. Nothing in the Utah Code supports State Farm's position that a self-insured retention is insurance in a general negligence context. The Utah Insurance Code defines self-insurance as "an arrangement under which a person provides for spreading its own risks by a systematic plan."

Utah Code Ann. § 31A-1-301(154).  The Code, however, excludes "self-insurance" from its regulation: "this title does not apply to . . . self-insurance."  Utah's Insurance Code regulates "self-insurance" in only a few instances, such as compulsory auto liability insurance.  In these instances the law "expressly requires [a self-insurer] to assume certain obligations of an insurer." *Neel v. State*, 854 P.2d 581, 584 (Utah Ct. App. 1993).

State Farm relies on several cases in the context of an employer's self-insurance for auto insurance liability. However, these obligations imposed on self-insurers arise by operation of statute and are inapposite to the case at hand.  In this case, Nay was primarily liable for his own negligence and there are no statutory obligations on COP in the context of general negligence liability.

Nay's contractual insurance with State Farm takes priority over COP's self-insured retention for a negligence claim such as Miller's.  The law is clear that an insured's own insurance takes priority over a principal's insurance or self-insurance when, as here, the principal would be vicariously liable for the actions of the negligent agent.  The court concludes that the "other insurance" provisions in Nay's policies do not apply to COP's self-insured retention.

State Farm further argues that the term "self insurance" in Nay's personal umbrella policy would refer to COP's self-retained risk.  But the term "self insurance" in Nay's policy could only refer to Nay's own self-retained amount–not the self-retained risk of another "self," such as COP. The contract between State Farm and Nay cannot create a relationship between COP and Nay. This is particularly true where, as here, COP (as Nay's principal) would be entitled to be indemnified by Nay had COP had to pay for Nay's negligent acts in the course and scope of his actions as an agent for COP.

For these reasons, the court concludes that State Farm's contractual insurance with Nay was Nay's primary insurance for the Miller lawsuit and State Farm properly paid the limits of both policies to settle the Miller lawsuit. COP's self-insured retention does not constitute "other insurance" or "self insurance" as those terms are used in Nay's State Farm insurance policies. COP was not contractually or legally obligated to provide primary protection to Nay in the Miller Lawsuit. In contrast, State Farm was contractually and legally obligated to do so. Accordingly, the court grants COP's motion for summary judgment on State Farm's policy related claims and denies State Farm's motion for partial summary judgment on those claims.

2. **Reliance-Based Claims**

State Farm has asserted claims for equitable estoppel and unjust enrichment, arguing that State Farm relied on representations by COP that it would take primary responsibility for Nay's defense. COP seeks summary judgment on these claims, arguing that it never told State Farm that it would provide primary coverage to Nay and it received no unjust benefit from State Farm's payment of Nay's settlement in the Miller Lawsuit. State Farm, however, argues that there are disputed issues of material fact precluding summary judgment on State Farm's claims for equitable estoppel and unjust enrichment.

    A. **Equitable Estoppel**

Equitable estoppel is "a doctrine which precludes parties from asserting their rights where their actions or conduct render it inequitable to allow them to assert those rights." *Hunter v. Hunter*, 669 P.2d 430, 432 (Utah 1983). The "purpose of estoppel is to rescue from loss a party who has, without fault, been *deluded* into a course of action by the *wrong* or neglect of another." *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 40, 259 P.3d 539 (emphasis in

original).  To establish a claim for equitable estoppel, State Farm must prove three element: (1) "there must be a statement, admission, act or failure to act by one party inconsistent with a claim later asserted"; (2) "reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act or failure to act"; and (3) "injury to the second party that would result from allowing the first party to contradict or repudiate such a statement, admission, act or failure to act."  *Id.* ¶ 41.

State Farm claims that COP's actions and statements through its stipulation that Nay was acting in the course of his duties, its attorneys, its director of risk management, its insurance policies, and its course of operations are inconsistent with its denial of coverage for Nay.  State Farm asserts that it reasonably relied on these representations and that it will suffer injury if COP is allowed to benefit from State Farm's payments on behalf of Nay.

First, State Farm claims it has provided sufficient evidence for an equitable estoppel claim because "COP failed to follow through with its commitment to provide Bishop Nay with primary coverage as conveyed through . . . the stipulation it entered in the underlying litigation." During the Miller lawsuit, COP entered a stipulation stating simply that Nay was acting within the scope and course of his volunteer service as a bishop for COP at the time of Miller's accident.  However, nothing in the stipulation refers to insurance coverage.

After COP entered into the stipulation with Miller, State Farm's counsel in the Miller Lawsuit, Mr. Joyce, told State Farm that it was his opinion that the stipulation would result in all liability defaulting back to the Church and that the Church would take the lead.  These opinions, however, are not based on representations from COP.  In addition, the opinions are based on a misunderstanding of the law.  Such opinions cannot form the basis of an equitable estoppel claim

and do not create an issue of fact. Therefore, the court concludes that COP's stipulation in the Miller Lawsuit cannot support State Farm's equitable estoppel claims because it was only a representation to Miller, was unconnected to insurance coverage, and misunderstood by State Farm's counsel in the previous action.

Second, State Farm argues that the representations and conduct of the Church's attorney in the Miller Lawsuit, Mr. McConkie, and the Church's Director of Risk Management, Mr. Rytting, create questions of fact that preclude summary judgment on its estoppel claim. State Farm asserts that it relied on COP providing primary coverage to Nay when the Church took the lead and directed the course of the Miller litigation. However, the evidence cited by State Farm does not support that assertion. State Farm had no direct contact with Mr. McConkie or Mr. Rytting, and State Farm's attorney, Mr. Joyce, testified that no Church representative made any statement to him indicating the Church would assume primary responsibility for the defense, indemnification, or settlement of Miller's claims against Nay. State Farm's corporate representative testified that COP's position from the beginning was that it would not defend or indemnify Nay until and unless his State Farm insurance was exhausted. Nay's State Farm retained counsel may have had some confusion about the significance of the stipulation that Nay was acting in the course of his calling, but even he does not claim that COP ever said it would take on the defense or indemnify Nay for amounts less than the State Farm coverage. COP only assured Nay that it would cover him for any liability above State Farm's coverage.

It is undisputed that COP never said it would assume primary coverage for Nay in the Miller Lawsuit. The court, therefore, concludes that there is not sufficient evidence to support State Farm's contention that Mr. McConkie or Mr. Rytting's representations create a question of

fact as to whether COP would defend or indemnify Nay in the Miller Lawsuit.

Furthermore, there is no evidence that State Farm relied on the terms of COP's excess insurance policy or its procedures for handling liability claims at the time it paid Nay's policy limits to settle the Miller Lawsuit. State Farm has not provided any evidence that it knew the terms of COP's policy or COP's liability claim procedure prior to discovery in this case. Therefore, State Farm has failed to provide any evidence of reliance that could support an equitable estoppel claim. Accordingly, the court grants COP's motion for summary judgment on State Farm's equitable estoppel claim.

### B. Unjust Enrichment

"A claim for unjust enrichment in Utah requires proof of three elements: '(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee to retain the benefit without payment of its value.'" *Rawlings v. Rawlings*, 240 P.3d 754, ¶ 29 (Utah 2010).

State Farm argues that a trier of fact may find that COP was unjustly enriched when it assisted Nay in obtaining independent counsel who then allegedly "strong-armed" State Farm into paying Nay's policy limits to settle the Miller Lawsuit. State Farm claims that it conferred a benefit on COP by paying a settlement amount that it had no contractual obligation to pay. However, State Farm was the only party contractually obligated to defend and indemnify Nay. COP was not unjustly enriched by State Farm's fulfillment of its contractual obligation to Nay. Moreover, while State Farm claims to have been "strong-armed," State Farm is a sophisticated business entity and the undisputed facts demonstrate that it acted in its own best interest when it paid the policy limits to settle the Miller lawsuit. State Farm asserts that it was under "duress" to

pay on Nay's policy.  However, it makes no attempt to demonstrate facts to meet a legal definition of duress.  Rather, it merely cites to letters from Nay's independent counsel that reminded State Farm of its contractual duties to Nay and the consequences of failing to meet those obligations.  The court finds nothing improper in COP providing Nay with assistance in retaining independent counsel when the coverage dispute arose in the midst of the Miller Lawsuit.  Furthermore, such assistance does not provide a basis for an unjust enrichment claim against COP.

State Farm's unjust enrichment claim fails for many of the same reasons that its equitable estoppel claim fails.  The undisputed evidence demonstrates that State Farm had a contractual obligation to defend and indemnify Nay, COP had no such contract, and COP never made any representations that it would indemnify Nay unless and until the State Farm policy was exhausted.  When independent counsel pressured State Farm to pay on the policy, he was doing nothing more than requiring State Farm to meet its contractual obligations.  COP derived no unjust benefit from such actions.  Accordingly, the court concludes that COP is entitled to summary judgment on State Farm's unjust enrichment claim.

## CONCLUSION

Based on the above reasoning, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Partial Summary Judgment is DENIED.  Because this decision disposes of all the claims at issue in the case, the Clerk of Court is directed to enter judgment in favor of Defendant and close the case.

Dated this 14th day of January, 2015.

                          BY THE COURT:

                          _____
                          Dale A. Kimball,
                          United States District Judge